## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| GEORGIA R. GUERTIN | ) | |
| | ) | |
| PLAINTIFF | ) | |
| vs. | ) | |
| | ) | |
| OCWEN LOAN SERVICING LLC, | ) | |
| | ) | |
| ONE WEST BANK | ) | |
| | ) | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, | ) | DOCKET NO. |
| AS TRUSTEE OF THE INDYMAC INDX MORTGAGE | ) | |
| LOAN TRUST 2006-AR3, MORTGAGE PASS- | ) | |
| THROUGH CERTIFICATE, SERIES 2006-AR3 | ) | |
| UNDER THE POOLING AND SERVICING | ) | |
| AGREEMENT DATED FEBRUARY 1, 2006. | ) | |
| | ) | |
| DEFENDANTS | ) | |

## COMPLAINT

## REQUEST FOR JURY TRIAL

## I.  INTRODUCTION

Georgia Guertin has lived in her home at 37 Elm Street, in Sanford Maine for over 50 years.

Ms. Guertin fell behind on her home mortgage payments and as a result, filed for chapter 13

bankruptcy protection on March 11, 2011.  In the course of her bankruptcy plan confirmation,

Ms. Guertin applied for and was granted a home loan modification that provided a fixed interest

rate and an affordable monthly payment.  Yet, despite court orders, numerous calls, letters, and

counsel intervention, Ocwen has failed to honor the modification and apply Ms. Guertin's

payments according to its terms.  For over three years, Ocwen has attempted to collect on

inflated amounts calculated per the pre-modified terms of the loan, has repeatedly

misrepresented to Ms. Guertin that she is in default and at risk of losing her home, and has continued to prosecute a prepetition foreclosure action from 2008, even though Ms. Guertin cured all arrears through her chapter 13 bankruptcy plan and received a discharge on November 3, 2014.  Ms. Guertin has received no loan statements from Ocwen post discharge, only receiving notices that her interest rate was increasing, requiring higher payments than under the court approved modified loan agreement.  Ms. Guertin, for fear of losing her home, has made the inflated payments as best she could, yet has been unable to consistently maintain regular payments on the inflated amounts.  The Defendants' relentless efforts to collect on inflated amounts that were not due has caused Ms. Guertin severe emotional distress as she has struggled and sacrificed to make the payments on her fixed retirement income and fears daily that she will lose the home where she has lived for over 50 years.

This is an action for actual (including emotional distress), compensatory, statutory and punitive damages brought by Georgia Guertin, against Ocwen Loan Servicing LLC ("Ocwen"), OneWest Bank ("OneWest") and Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2006-AR3, Mortgage Pass-through certificate, Series 2006-AR3 Under the Pooling and Servicing Agreement Dated February 1, 2006 ("Deutsche Bank") for violations of the Bankruptcy Automatic Stay pursuant to 11 U.S.C. § 362; Bankruptcy Discharge Injunction pursuant to 11 U.S.C. § 524; Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; Maine Fair Debt Collection Practices Act, 32 M.R.S.A. § 11001 *et seq*. (hereinafter collectively known as the ''FDCPA''), Maine Consumer Credit Code, 9-A M.R.S. §§ 9-403(F) and (G); and the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2605 et seq., all of which prohibit abusive, deceptive, and unfair debt collection practices. The Plaintiff also

initiates this action to bring common law claims of Fraud/Fraudulent Misrepresentation, Breach of Contract and Promissory Estoppel.

## II.      JURISDICTION AND VENUE

1. The jurisdiction of this Court is conferred by 28 U.S.C. § 1331 and 28 U.S.C. §1367.

2. Venue is proper as the Plaintiff is a resident of York County, Maine; all relevant events occurred in this District, and the Defendants were doing business in Maine during all relevant times.

## III.      PARTIES

3. Plaintiff Georgia Guertin is a natural person and residing in Sanford, Maine.

4. Ms. Guertin is a 78 year old widow who lives by herself on a fixed retirement income.

5. IndyMac Bank, FSB was the lender and original note holder for the Plaintiff's loan on the property located at 37 Elm Street, Sanford, Maine.

6. The Plaintiff's mortgage loan with IndyMac, FSB originated on January 20, 2006.

7. Upon information and belief, the Plaintiff's loan was transferred to Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2006-AR3, Mortgage Pass-through certificate, Series 2006-AR3 Under the Pooling and Servicing Agreement Dated February 1, 2006 ("Deutsche Bank") shortly after the origination date of January 20, 2006.

8. Upon information and belief, IndyMac continued to service the loan.

9. Upon information and belief, Defendant Deutsche Bank is a banking association organized and existing under the laws of the United States of America with a principal place of business in New York City, New York.

3

10. Deutsche Bank is the current holder and/or investor of the Plaintiff's loan.

11. IndyMac Bank failed in 2008 and was seized by the United States Federal Deposit Insurance Corporation (FDIC).

12. Upon information and belief, the FDIC put the IndyMac assets up for auction and the bulk of the business was sold to IMB Hold Co LLC which turned into OneWest Bank.

13. Upon information and belief, Defendant OneWest Bank is a national bank with a principal place of business in California.

14. OneWest Bank serviced the Plaintiff's loan under the business name: IndyMac Mortgage Services, a division of OneWest Bank, FSB.

15. On or around November 1, 2013, the servicing of Ms. Guertin's home mortgage loan was transferred from OneWest to Ocwen.

16. Defendant Ocwen is a limited liability, publicly traded corporation organized under the laws of Delaware, with a principal place of business in Florida.

17. Ocwen is the current servicer of the Plaintiff's loan.

18. Upon information and belief, Deutsche Bank, hired IndyMac and then IndyMac Mortgage Services a division of OneWest bank, FSB and then Ocwen to service Ms. Guertin's loan and authorized IndyMac and then IndyMac Mortgage Services a division of OneWest Bank, FSB and then Ocwen, to conduct transactions involved in the servicing of the Ms. Guertin's loan.

19. Deutsche Bank was and remains the principal over its agents IndyMac bank, IndyMac Mortgage Services a division of OneWest Bank, FSB and Ocwen regarding the servicing of Ms. Guertin's loan.

20. At all relevant times to this Complaint OneWest and Ocwen were acting within the scope of their agency relationship with Deutsche Bank.

21. Ocwen treated Ms. Guertin's loan as if in default when it took on the servicing of the loan.

22. Ocwen engages in the business of collecting debts in this state.

23. Ocwen regularly engages in the enforcement of security interests securing debts.

24. Ocwen collects debts using the mails and telephone, and Ocwen regularly attempts to collect debts alleged to be due to another.

25. Ocwen is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), 32 M.R.S.A. §§ 11002(6) and 11003(7)(C).

## IV. FACTS

26. Ms. Guertin and her son, Brian Guertin, entered into a mortgage on her home at 37 Elm Street, Sanford, Maine as security for an adjustable rate note from Indy Mac F.S.B. on January 20, 2006.

27. Ms. Guertin and Brian fell behind on payments on the loan while it was serviced by Indy Mac Mortgage Services, a division of One West Bank, FSB.

28. Deutsche Bank commenced a foreclosure action against Ms. Guertin and Brian in 2007 in the York County Superior Court entitled *Deutsche Bank National Trust Company v. Georgia Guertin, Docket No.: RE-07-10.*

29. Ms. Guertin filed for chapter 13 bankruptcy protection on March 11, 2011 in the U.S. Bankruptcy Court, District of Maine, in an attempt to save her home: *In re Georgia Guertin*, Case No. 11-20294.

30. OneWest Bank received notice of Ms. Guertin's chapter 13 Bankruptcy Case as evidenced by the Notice of Chapter 13 Case dated March 16, 2011.  A true and accurate copy of the Notice and Certificate of Service are attached hereto as Exhibit 1 and incorporated herein by reference.

31. On June 13, 2011, "OneWest Bank FSB as Loan Servicer for Deutsche Bank National Trust Company, as Tustee of the IndMac Indx Mortgage" filed a Proof of Claim in the bankruptcy with the name and address listed as OneWest Bank, FSB, 2900 Esperanza Crossing, Austing, TX 78758.  A true and accurate copy of the Proof of Claim and attached Exhibits are attached hereto as Exhibit 2.

32. OneWest acted as the agent for receiving notices and communications in  the bankruptcy matter for Deutsche Bank.

33. On February 10, 2012, the court granted interim confirmation of Ms. Guertin's plan which provided that she would seek modification of her mortgage to cure the arrears. OneWest was delivered notice of the Order.  A true and accurate copy of the Interim Order Confirming the chapter13 plan and proof of notice is attached hereto as Exhibit 3 and incorporated herein by reference.

34. Ms. Guertin applied for a loan modification and in a letter dated June 4, 2012 OneWest Bank offered Ms. Guertin a trial period plan in order to qualify for a permanent loan modification.

35. The offer indicated that to qualify for a permanent loan modification Ms. Guertin must make three payments under the trial period pan.  The trial period plan required payments of $722.02 for July, August, and September 2012.  The plan stated that, "[a]fter all trial period payments are timely made and you have submitted all the required documents,

your mortgage will be permanently modified." A true and accurate copy of the trial

period loan modification offer is attached hereto as Exhibit 4 and incorporated herein by

reference.

36. Ms. Guertin made the trial plan payments.  No additional documents were requested or

required by OneWest.

37. In a letter dated August 24, 2012, OneWest Bank offered Ms. Guertin a permanent loan

modification with an effective date of October 1, 2012.  A true and accurate copy of the

letter and modification as signed by Ms. Guertin is attached hereto as Exhibit 5 and

incorporated herein by reference.

38. The letter laid out a specific two-step process to accept the offer of a permanent loan

modification.  The letter stated:

> Step 1: COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE
> DUE DATE.  To accept this offer, you must sign, have notarized and return both
> copies of the Modification Agreement to us in the enclosed, pre-paid envelope by
> 9/24/2012. . . . Step 2: CONTINUE TO MAKE YOUR TRIAL PERIOD
> PAYMENTS ON TIME.  Be certain to make any remaining trial period payments
> on or before the dates they are due.

39.  Ms. Guertin signed and had notarized the permanent loan modification and then

delivered it to OneWest Bank within the time required.  The August 24, 2012

modification only had a line for her signature, not Brian's. *See* Exhibit 5.

40.  On September 17, 2012, OneWest sent a notice stating that it required Brian's signature

on the modification, too, and provided a new modification agreement for them both to

sign and have notarized.

41. Ms. Guertin and Brian signed and had the modification notarized and then Ms. Guertin,

through counsel, delivered it to OneWest via UPS on September 25, 2012.  A true and

accurate copy of the signed loan modification and proof of delivery is attached hereto as Exhibit 6 and incorporated herein by reference.

42. Ms. Guertin, through counsel, filed a motion for Authority to Modify the Mortgage Loan with the Bankruptcy Court on October 1, 2012.  A true and accurate copy of the motion is attached hereto as Exhibit 7 and incorporated herein by reference.

43. The loan modification provides that Ms. Guertin's monthly principal, interest, and escrow payment shall be $722.02 per month, which was $289.96 less than the previous payments, and the interest rate would be 2.885%.  The payment and interest amount was to remain unchanged for a period of five years beginning on October 1, 2012, but for periodic escrow adjustments in accordance with applicable law.  The loan modification provides for an interest-free deferment of $100,869.31 until the end of the loan and, if Ms. Guertin remains in current status on the loan (no more than three payments behind) for three years, the lender will reduce the deferred balance in installments of one-third of the deferred balance each year, for a period of three years, after which the deferred amount will be forgiven. *See* Exhibit 6.

44. Ms. Guertin made her first payment of $722.02, pursuant to the terms of the permanent loan modification, on October 2, 2012.

45. A partial payment record provided to Ms. Guertin by Ocwen in 2015 shows that Ms. Guertin's October 2, 2012 payment was misapplied and placed in suspense. A true and accurate copy of the payment history is attached hereto as Exhibit 8 and incorporated herein by reference.

46. Subsequent payments were also misapplied and placed in suspense.  *See* Exhibit 8.

47. The Bankruptcy Court approved the modification of the loan on October 30, 2012 and OneWest Bank FSB received notice. A copy of the OneWest loan modification was attached to Ms. Guertin's motion for approval. A true and accurate copy of the Order granting the motion is attached hereto as Exhibit 9 and incorporated herein by reference. A copy of the Certificate of Notice of the Order Authorizing Debtor to Modify Mortgage Loan is attached as Exhibit 10 and incorporated herein by reference.

48. OneWest never implemented the loan modification for Ms. Guertin's loan.

49. OneWest knew or should have known that its failure to implement the loan modification would cause confusion and inaccurate servicing of the loan either by them or any subsequent servicer.

50. On September 4, 2013, Deutsche Bank filed with the bankruptcy court as an addendum to its Proof of Claims, a Notice of Mortgage Payment Change reflecting an increase of escrow payment from $245.23 to $287.51 for a new total payment of $867.54. A true and accurate copy of the notice is attached hereto as Exhibit 11 and incorporate herein by reference.

51. Ms. Guertin began making the higher payment of $867.54.

52. In a letter dated October 16, 2013, OneWest Bank notified Ms. Guertin that the servicing of her loan was being transferred to Ocwen, effective November 1, 2013. A true and accurate copy of the letter is attached hereto as Exhibit 12 and incorporated herein by reference.

53. Upon acceptance of the loan for servicing, Ocwen had notice of Ms. Guertin's chapter 13 bankruptcy.

54. Upon acceptance of the loan for servicing, Ocwen had notice and/or access to Ms. Guertin's permanent loan modification.

55. Upon acceptance of the loan for servicing, Ocwen had notice and/or access to the Court's order approving the loan modification.

56. Ocwen sent mortgage statements to Ms. Guertin for November and December of 2013. A true and accurate copy of the mortgage statements are attached hereto as Exhibit 13 and Exhibit 14, respectively and incorporated herein by reference.

57. The mortgage statements were inaccurate and indicated that pre-petition and pre-modification amounts were due.  *See* Exhibits 13 and 14.

58. Ocwen placed Ms. Guertin's payments in suspense, improperly misapplying her mortgage payments during her chapter 13 bankruptcy plan.

59. On Jan. 13, 2014, Ocwen sent a letter regarding "Adjustable Rate Mortgage Change" notifying Ms. Guertin that her payment would increase again to $916.55 in accordance with her "adjustable rate mortgage."  A true and accurate copy of the letter is attached hereto as Exhibit 15 and incorporated herein by reference.

60. Ms. Guertin struggled to pay the higher amount but did her best for fear of losing her home.

61. On February 26, 2014, the Consumer Financial Protection Bureau (CFPB), together with attorneys general and state banking regulators in 49 states and the District of Columbia, obtained a Consent Judgment against Ocwen Financial Corporation, and its subsidiary, Ocwen Loan Servicing. The consent order addresses Ocwen's misconduct in mortgage servicing.  A copy of the Consent Judgment can be found at:

https://nationalocwensettlement.com/Portals/0/Documents/ConsentJudgement.pdf

62. On July 29, 2014, The Bankruptcy Court issued a First Amended Order Allowing and Disallowing Claims indicating that Ms. Guertin was to address the pre-petition mortgage arrears through the court approved loan modification. A true and accurate copy of the order and proof of delivery to Ocwen, OneWest, and Deutsche Bank are attached hereto as Exhibit 16 and incorporated herein by reference.

63. Ms. Guertin received her bankruptcy discharge confirming completion of her plan on November 3, 2014 and Ocwen was served with notice of the discharge. A true and accurate copy of the order and notice is attached hereto as Exhibit 17 and incorporated herein by reference.

64. Ocwen did not file any notice indicating that Ms. Guertin failed to make any of her payments pursuant to the loan or modification during the bankruptcy proceedings.

65. Despite the court approved modification of Ms. Guertin's loan, and her subsequent discharge, Ocwen has failed to send monthly mortgage statements, failed to recognize Ms. Guertin's modified monthly payment, continues to misapply her payments and continues to send her notices that indicate Ocwen manages her loan under the original terms of the adjustable rate mortgage she received in 2006.

66. On December 30, 2014 Ocwen sent a letter detailing further changes to Ms. Guertin's payment and interest rate. In that notice, Ocwen indicated an interest rate increase from 2.877% to 3.000% and a monthly payment change from $916.55 to $865.88. Such a rate change is not consistent with the court approved permanent loan modification and is reflective of the original Adjustable Rate Mortgage. A true and accurate copy of the letter is attached hereto as Exhibit 18 and incorporated herein by reference.

67. Ms. Guertin struggled to make the payments, but did so anyway for fear of losing her house.

68. Ocwen continued to misapply Ms. Guertin's payments, seek pre-petition loan amounts and amounts per the pre-modified loan Ms. Guertin.

69. Ocwen returned Ms. Guertin's July 2015 payment with a letter dated July 9, 2015 stating that the payment was "insufficient to cure default." A true and accurate copy of the letter and check are attached hereto as Exhibit 19 and incorporated herein by reference.

70. Ms. Guertin was never sent a default notice by Ocwen after her bankruptcy petition, plan performance, discharge, or thereafter.

71. Ms. Guertin was never sent a cure letter from Ocwen.

72. Ocwen continuously failed to provide Ms. Guertin with monthly loan statements post discharge.

73. Ms. Guertin called Ocwen to discuss the returned payment but was not given an explanation that she could understand. She tried to explain she had a loan modification and had completed a bankruptcy but Ocwen did not correct its error.

74. Ocwen returned Ms. Guertin's August 2015 payment with a letter dated August 24, 2015, stating that the payment was "insufficient to cure default." A true and accurate copy of the letter and check are attached hereto as Exhibit 20 and incorporated herein by reference.

75. Ms. Guertin received a letter dated September 24, 2015 from Ocwen's local counsel, Bendett & McHugh, regarding the matter of *Deutsche Bank National Trust Company, as Trustee v. Georgia Guertin et al.* Docket Number: RE-07-10. Contained in the letter was a copy of the Plaintiff's Motion to Enlarge Time to Commence Publication. A true and

accurate copy of the letter and motion is attached hereto as Exhibit 21 and incorporated herein by reference.

76. The motion is related to Deutsche Bank's pre-bankruptcy petition foreclosure action.

77. Ocwen returned Ms. Guertin's September 2015 payment for $924.88 with a letter dated September 16, 2015 stating that the payment was "insufficient to cure default." A true and accurate copy of the letter is attached hereto as Exhibit 22 and incorporated herein by reference.

78. Neither Ocwen nor Deutsche Bank provided any information on what would be sufficient to cure the alleged post-petition default as indicated in the returned payment letters; Deutsche Bank simply continued with their pre-petition foreclosure proceedings.

79. Ocwen returned Ms. Guertin's October 2015 payment with a letter dated October 15, 2015 stating that the payment was "insufficient to cure default." A true and accurate copy of the letter is attached hereto as Exhibit 23 and incorporated herein by reference.

80. On or around November 9, 2015, Ms. Guertin, through counsel Molleur Law Office, sent Ocwen a Qualified Written Request (QWR) and Request for Information (RFI) pursuant to RESPA. Ms. Guertin requested documents relating to her loan, including a copy of the complete life-of-the-loan payment history that included any escrow accounts and suspense accounts. This QWR/RFI included a third party authorization form indicating that Ms. Guertin authorized Molleur Law Office to speak to Ocwen on Ms. Guertin's behalf. A true and accurate copy of the letter, including proof of delivery, is attached hereto as Exhibit 24 and incorporated herein by reference.

81. On or around November 13, 2015, Ms. Guertin, through counsel Molleur Law Office, sent Ocwen another QWR and RFI requesting information regarding the loan. This

QWR/RFI again included a third party authorization form indicating that Ms. Guertin authorized Molleur Law Office to speak to Ocwen on Ms. Guertin's behalf. A true and accurate copy of the letter, including proof of delivery, is attached hereto as Exhibit 25 and incorporated herein by reference.

82. On November 18 and 20, 2015, Ocwen acknowledged receipt of the QWRs. In a letter dated November 20, 2015, Ocwen sent a Loan Reinstatement Quote alleging $80, 291.04 as the total amount due to reinstate the loan, of which $18,116.92 was alleged in principal payment due and $41,116.03 was alleged in interest payment due. A true and accurate copy of the letter is attached hereto as Exhibit 26 and incorporated herein by reference.

83. The November 20, 2015 Loan Reinstatement Quote was inaccurate and misrepresents what Ms. Guertin owed on her loan at that time.

84. Ocwen returned Ms. Guertin's November 2015 payment with a letter dated November 11, 2015 stating that the payment was "insufficient to cure default." A true and accurate copy of the letter is attached hereto as Exhibit 27.

85. In a letter dated November 27, 2015, Ocwen sent Ms. Guertin a Payoff Quote indicating a "Next Due Date" of August 1, 2008 - nearly seven years before the letter was sent. The letter also indicated a total amount due of $197,416.80 including interest of $42,499.11. This amount and next due date was inaccurate and misrepresented what Ms. Guertin owed on the loan at that time. Furthermore, the interest was not even consistent with the reinstatement quote sent only seven days earlier. A true and accurate copy of the letter is attached hereto as Exhibit 28 and incorporated herein by reference.

86. In a letter dated December 7, 2015, Ocwen responded to Ms. Guertin's QWR stating that:

a.  Ocwen had updated their records to reflect Molleur Law Office and staff as an authorized third party to receive and discuss information regarding Ms. Guertin's Loan;

b.  Ocwen had submitted a request for the Ocwen Payment Reconciliation History to be sent the attention of Molleur Law Office;

c.  Ocwen's records reflected notice of Ms. Guertin's bankruptcy, and;

d.  It is Ocwen's policy not to send monthly account statements on accounts that are part of a chapter 13 bankruptcy case.

e.  Ocwen had notice of Ms. Guertin's 2011 bankrupcty petition and 2014 discharge.

87. Among the information requested and not provided was a complete loan transaction history.  A true and accurate copy of the letter is attached hereto as Exhibit 29 and incorporatedherein by reference.

88. In a separate correspondence dated December 7, 2015 to Ms. Guertin, Ocwen included a copy of the permanent loan modification. A true and accurate copy of the letter and enclosures is attached hereto as Exhibit 30 and incorporated herein by reference.

89. Ocwen returned Ms. Guertin's December 2015 payment with a letter dated December 14, 2015 stating that the payment was "insufficient to cure default."  A true and accurate copy of the letter is attached hereto as Exhibit 31 and incorporated herein by reference.

90. On December 18, 2015 Ocwen sent a notice to Ms. Guertin notifying her of yet another rate increase from 3.000% to 3.500% and a payment increase from $857.69 to $884.36. A true and accurate copy of the letter is attached hereto as Exhibit 32 and incorporate herein by reference.

91. The December 18, 2015 notice indicated that such changes were "under the terms of the Adjustable-Rate Mortgage." *See* Exhibit 32.

92. On January 7, 2016, through counsel, Ms. Guertin sent Ocwen a certified letter informing Ocwen that their actions surrounding Ms. Guertin's loan were in violation of the bankruptcy discharge injunction granted to Ms. Guertin after completion of her chapter 13 bankruptcy.  A true and accurate copy of the letter along with proof of delivery are attached hereto as Exhibit 33 and incorporated herein by reference.

93. On January 7, 2016, through counsel, Ms. Guertin sent Ocwen a QWR and included a Notice of Error (NOE) regarding the issues with the failure to implement the loan modification. This QWR also contained a third party authorization form signed by Ms. Guertin indicating that Ms. Guertin authorized Molleur Law Office to speak to Ocwen on Ms. Guertin's behalf.  A true and accurate copy of the QWR/NOE with proof of delivery is attached hereto as Exhibit 33 and incorporate herein by reference.

94. On January 7, 2016, through counsel, Ms. Guertin sent Ocwen's foreclosure counsel a separate but identical package as set fourth in Exhibit 33.  A true and accurate copy of proof of delivery is attached hereto as Exhibit 34 and incorporate herein by reference.

95. Ms. Guertin paid current counsel $25.00 to draft and deliver the QWR to try to have Ocwen correct the account.

96. Ocwen returned Ms. Guertin's January 2016 payment with a letter dated January 12, 2016 stating that the payment was "insufficient to cure default."  A true and accurate copy of the letter is attached hereto as Exhibit 35 and incorporated herein by reference.

97. Ocwen responded in a letter dated January 19, 2016 that it needed an additional 15 days to respond to the QWR.  A true and accurate copy of proof of delivery is attached hereto as Exhibit 36 and incorporate herein by reference.

98. Ocwen did not provide a response within the extended 15 day period.

99. In February 2016, Ms. Guertin delivered to Ocwen a monthly payment in the amount of $865.88 which was returned by Ocwen claiming "insufficient to cure default."  The letter and returned check is attached hereto as Exhibit 37 and incorporated by reference herein.

100. In an effort to obtain the complete loan transaction history that Ms. Guerin had requested in her previous QWRs and had not received, her paralegal contacted Ocwen to make the request.

101. After several calls, Ocwen representatives explained that they could only send out a loan transaction history after a $1.00 payment was made.  The payment could not be made by credit card.

102. On March 2, 2016, through counsel, Ms. Guertin delivered another QWR asking specifically for the loan transaction history and enclosing a check for $1.00.  A true and accurate copy of the letter, check, and mailing receipt is attached hereto as Exhibit 38 and incorporated herein by reference.

103. In a letter dated March 9, 2016 and addressed to Molleur Law Office, Ocwen stated that they would be unable to comply with the request to cease and desist collection activity on the loan, as the borrower, Georgia Guertin's, signature was missing on the correspondence:  "Therefore, we request you to provide us with the borrower's legible signed written request in order to cease our records to communicate with the borrower."

A true and accurate copy of the letter is attached hereto as Exhibit 39 and incorporated herein by reference.

104.     The letter also stated that even if Ocwen did modify the loan in accordance with the loan modification terms now as requested in the NOE, the loan would be past due for October 1, 2012. *See* Exhibit 39.

105.     As of the date of the March 9, 2016 Ocwen letter, Ms. Guertin had made 38 monthly mortgage payments to Ocwen since entering into the loan modification in October 2012, many of them over the required $722.02 amount, 28 of which were accepted and retained by Ocwen and 10 of which were returned to her by Ocwen as insufficient to cure the alleged arrears.

106.     Ocwen failed to properly apply the payments made by Ms. Guertin and accepted by Ocwen since October 2012.

107.     Ms. Guertin continues to make inflated payments each month for fear of Ocwen proceeding with the pre-petition foreclosure action or a new foreclosure action.

108.     Throughout this time, Ocwen has reported inaccurately to credit reporting bureaus by reporting derogatory information including an incorrect monthly payment amount due and that she is still in a chapter 13 plan.

109.     Ocwen engaged in a pattern and practice of failing to properly service Ms. Guertin's loan including failing to implement the modification, apply payments under the modification, comply with the orders of the Bankruptcy Court, and correct the issues regarding the loan.

110.     Upon information and belief, Ocwen has engaged in a pattern and practice of failing to properly service mortgage loans including failing to properly transfer and

implement loan modifications and failing to credit payments received pursuant a confirmed chapter 13 plan and court-approved modification as they did with Ms. Guertin. *See eg. allegations in: Carson v. Ocwen Loan Servicing LLC et al,* Maine District Court 2:15-cv-00514-DBH.

111.     Upon information and belief, Ocwen has engaged in a pattern and practice of attempting to collect on amounts not due under mortgage loans from bankruptcy debtors as they did with Ms. Guertin, including 1) failing to properly apply mortgage payments throughout the course of the bankruptcy, 2) attempting to collect on amounts not due in loans deemed current through the bankruptcy process, and 3) attempting to collect on loan amounts cured or discharged through a bankruptcy. *Id.*; *In re Alley*, 09-21500, 2014 WL 2987656 (Bankr. D. Me. July 1, 2014); *See also allegations in: Ackley v. Ocwen Loan Servicing et al*, Civil No. 2:16-cv-00015-JDL (U.S. D. Ct. Me. January 12, 2016); *Ackley v. Ocwen Loan Servicing et al*, Civil No. 2:15-cv-00042-JDL(U.S. D. Ct. Me. January 29, 2015); *Alley et al. v. Saxon Mortgage Services, as Acquired by Ocwen,* Adv. No. 13-02070 (U.S. Bankruptcy Court D. Me. December 12, 2013); *Curro v. Ocwen et al* Adv. No. 13-02034 (U.S. Bankruptcy Court D. Me. August 9, 2013).

112.     Due to increased stress and financial strain caused by Ocwen's mismanagement of Ms. Guertin's loan, Ms. Guertin experienced extreme stress, anxiety and frustration due to Ocwen's mismanagement of the loan.  She could not understand why her payment was increasing and then why Ocwen refused to accept her payments.  Ms. Guertin is on a fixed income and she feared she would lose her home if the payments did not return to the amount of the court-approved permanent modification.  Having to make the increased payments on her limited fixed retirement income caused severe distress and financial

strain.  She experienced a sharp loss of enjoyment in her life.  She stopped taking weekend trips with friends, stopped going out with friends and stopped buying any nonessential items because she had to first pay the increased mortgage payment each month and had little left over for activities she used to enjoy. Then, when she received Deutsche Bank's Motion to Enlarge Time to Commence Publication to sell her home in September 2015 (Exhibit 21), she became paralyzed with fear that all she had done with the loan modification, payments, and bankruptcy had not stopped the foreclosure.

113.    Ms. Guertin continues to make her monthly payment to Ocwen and they continue to return it stating it is insufficient to cure an alleged default.  Every day Ms. Guertin worries that Ocwen will continue with the foreclosure of her home and she will not know where to go.

## IV. CLAIMS

### COUNT ONE:  Violation of the Bankruptcy Automatic Stay, 11 U.S.C. § 362
### (Ocwen/OneWest/ Deutsche Bank)

114.    The Plaintiff repeats and realleges and incorporates by reference the paragraphs above as if fully set out herein.

115.    OneWest, Deutsche Bank, and Ocwen and/or their counsel had notice of Ms. Guertin's bankruptcy. *See* Exhibits 1, 2, 3, 9, 10, 16 and 17.

116.    OneWest violated the Bankruptcy Automatic Stay, 11 USC § 362 by, including but not limited to, having notice of the bankruptcy filing and willfully; 1) attempting to collect on pre-petition, pre-modification loan debt per the original terms of the loan after a permanent modification changed the terms of the mortgage, the bankruptcy court approved the loan modification, and the bankruptcy approved the chapter 13 plan that called for the arrears to be cured through the approved modification; and 2) by

20

misapplying post-petition payments per the pre-modified terms of the loan.

117.     Ocwen violated the Bankruptcy Automatic Stay, 11 USC § 362 by, including but not limited to having notice of the bankruptcy filing and willfully: 1) attempting to collect on pre-petition, pre-modification loan debt per the original terms of the loan after a permanent modification changed the terms of the mortgage the bankruptcy court approved the loan modification, and the bankruptcy approved the chapter 13 plan that called for the arrears to be cured through the approved modification; and 2) by misapplying post-petition payments per the pre-modified terms of the loan.

118.     OneWest's conduct of delivering inaccurate payment notice changes and an escrow account statement based on the pre-modified terms of the loan modification, failing to implement the modification, and failing to properly apply Ms. Guertin's payments after having notice of the bankruptcy and loan modification was unfair, coercive, harassing, willful, and knowing.

119.     Ocwen's conduct, including delivering inaccurate, inflated account statements, delivering inaccurate inflated change of payment notices, failing to implement the modification, and failing to properly apply Ms. Guertin's payments after having notice of the bankruptcy and loan modification, was unfair, coercive, harassing, willful, and knowing.

120.     Ms. Guertin felt harassed and coerced to the point that she believed that OneWest then Ocwen would eventually take her home if she did not pay the inflated amounts of alleged arrears or the pre-modified and pre-petition payment amount.  She continued to pay the increased payment amounts sought, many of which were returned to her by Ocwen without explanation or information regarding how much she allegedly owed on

the loan.

121.     As a result of OneWest's and Ocwen's conduct, including their actions and

inactions, Ms. Guertin suffered actual damages, including but without limitation:

attorneys' fees and costs, utter frustration and desperation, and other emotional and

mental distress as outlined above.

122.     Further, as detailed above, Ocwen has engaged in a pattern and practice of

misapplying payments in bankruptcy and trying to collect from debtors on debts listed in

bankruptcy.

123.     Such conduct is outrageous and egregious.

124.     OneWest and Ocwen's actions demonstrate its wanton, knowing, willful violation

of 11 U.S.C. §362.

125.     One West and Ocwen violated the Bankruptcy Automatic Stay and Ms. Guertin is

entitled to receive from the Defendants actual and compensatory damages, including

costs and attorneys' fees, and punitive damages in this matter pursuant to 11 U.S.C. §362,

and further relief as may be just and proper.

126.     As the principal of agents OneWest, then Ocwen acting within the scope of their

agency, Deutsche Bank National Trust Company, as Trustee is jointly and severally liable

for OneWest and Ocwen's conduct.

127.     Deutsche Bank National Trust Company, as Trustee had notice of the bankruptcy

and discharge. *See* Exhibits 1, 17.

### <u>COUNT TWO:</u> Violation of the Bankruptcy Discharge Injunction, 11 U.S.C. § 524 (Ocwen/Deutsche Bank)

128.     The Plaintiff repeats and realleges and incorporates by reference the paragraphs

above as if fully set out herein.

129.     Deutsche Bank and Ocwen had notice of Ms. Guertin's bankruptcy, including the discharge, and participated in Ms. Guertin's bankruptcy. *See* Exhibits 1, 2, 3, 9, 10, 16, and 17.

130.     Ocwen violated the Bankruptcy Discharge Injunction, 11 USC § 524, by, including but not limited to; 1) having notice of the bankruptcy filing and willfully attempting to collect on pre-petition, pre-modification loan debt per the original terms of the loan after a permanent modification changed the terms of the mortgage and the bankruptcy court approved the loan modification and confirmed Ms. Guertin's chapter 13 plan which allowed for arrears to be cured by a loan modification; 2) by failing to credit payments received from Ms. Guertin per the modified and court-approved terms of the loan; and 3) by reporting inaccurately to the credit reporting bureaus.

131.     Deutsche Bank violated the Bankruptcy Discharge Injunction, 11 USC § 524, by, including but not limited to, seeking to continue the 2008 foreclosure action after the loan had been brought current through the modification in the bankruptcy.  *See* Exhibit 21.

132.     Ocwen's conduct of failing to credit Ms. Guertin's payments according to the modification approved by the Bankruptcy Court and confirmed in her chapter 13 plan, sending inflated notices of payment change, soliciting a loan modification application when a loan modification was already in place, and returning Ms. Guertin's payments as "insufficient to cure default" caused Ms. Guertin severe anxiety about losing her home as detailed above.  Such conduct was wanton, unfair, coercive, harassing, willful, and knowing.

133.     Deutsche Bank's conduct of pursuing the foreclosure action after Ms. Guertin had cured the default through the modification caused Ms. Guertin severe distress, as

described above, as she feared she would lose her home.  Such conduct was wanton, unfair, coercive, harassing, willful, and knowing.

134.     Ms. Guertin felt harassed and coerced to the point that she believed Deutsche Bank and Ocwen would eventually take her home if she did not pay the inflated payment amounts of the pre-modified payment amount.

135.     As a result of Deutsche Bank and Ocwen's conduct, including their actions and inactions, Ms. Guertin suffered actual damages, including but without limitation: attorneys' fees and costs, utter frustration and desperation, and other emotional and mental distress as outlined above.

136.     Further, as detailed above, Ocwen has engaged in a pattern and practice of failing to credit payments per a loan modification and bankruptcy plan and trying to collect from debtors on debts listed in bankruptcy.

137.     Such conduct is outrageous and egregious.

138.     Deutsche Bank and Ocwen's actions demonstrate its knowing, willful violation of 11 U.S.C. § 524.

139.     Deutsche Bank and Ocwen violated the Bankruptcy Discharge Injunction and Ms. Guertin is entitled to receive from the Defendants actual and compensatory damages, including costs and attorneys' fees, and punitive damages in this matter pursuant to 11 U.S.C. § 524, and further relief as may be just and proper.

140.      As the principal of its agent Ocwen and OneWest who was acting within the scope of their agency, Deutsche Bank is jointly and severally liable for their conduct.

**COUNT THREE and FOUR:**
**Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq. and M.R.S.A. § 1101 et seq.: Maine Fair Debt Collection Practices Act. (Ocwen)**

141.     The Plaintiff repeats and realleges and incorporates by reference the paragraphs

above as if fully set out herein.

142.     Within one year prior to the filing of this suit, and ongoing for more than one year

prior, by example only and without limitation, Ocwen violated the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692 et seq. and the Maine Fair Debt Collection Practices Act

32 M.R.S.A. § 11001 et seq. (collectively the "FDCPA"), as outlined above,  and

specifically by:

   a.  Falsely representing the character, amount, and legal status of the loan debt

       through letters and notices to Mr. Guertin and through reports to the credit

       reporting agencies (15 U.S.C. § 1692e(2); 32 M.R.S.A. § 11013(2)(B)) *See*

       Exhibits 18, 19, 20, 21, 22, 23, 26, 27, 28, 30, 31, 32, 35 and 37.

   b.  The use of false representations and deceptive means to collect on the loan debt

       through letters, statements and inaccurate credit reporting. (15 U.S.C. §

       1692e(10); 32 M.R.S.A. § 11013(2))  *See* Exhibits 18, 19, 20, 21, 22, 23, 26, 27,

       28, 30, 31, 32, 35 and 37.

   c.  Engaging in conduct, the natural consequence of which was to harass, oppress or

       abuse Ms. Guertin in connection with the collection of the mortgage debt by

       delivering notices seeking payment of monies not owed, misapplying payments,

       and returning payments made and reporting inaccurate amounts owed to the credit

       reporting agencies.  (15 USC § 1692d ; 32 M.R.S.A. § 11013(1)) *See* Exhibits 18,

       19, 20, 21, 22, 23, 26, 27, 28, 30, 31, 32, 35 and 37.

   d.  Communicating with Ms. Guertin in connection with the collection of the alleged

       inflated mortgage debt when Ocwen knew that the consumer was represented by

an attorney with respect to that debt and had knowledge of that attorney's name

and address. (15 USC § 1692c(2); 32 M.R.S.A. § 11012(1)(B));

e.   Using unfair or unconscionable means to collect or attempt to collect on the

mortgage debt through letters, statements and misapplication and rejection of

payments and inaccurate credit reporting. (15 USC § 1692f; 32 M.R.S.A. §

11013(3)) *See* Exhibits 18, 19, 20, 21, 22, 23, 26, 27, 28, 30, 31, 32, 35 and 37.

143.   As a result of the conduct, actions and inactions of Ocwen, Ms. Guertin suffered

actual damages including, without limitation, legal fees and costs, harassment, coercion,

fear and anxiety, and other emotional and mental distress as detailed above.

144.   Ms. Guertin is entitled to recover actual damages, including emotional distress

damages, statutory damages, costs and attorney's fees from Ocwen, and such further

relief as may be just and proper.

## COUNT FIVE:
**Illegal, Fraudulent of Unconscionable Conduct in Attempted Collection of Debts in Violation of the Maine Consumer Credit Code 9-A M.R.S. §§ 9-403(F) and (G) (Ocwen/ Deutsche Bank)**

145.   The Plaintiff repeats and realleges and incorporates by reference the paragraphs

above as if fully set out herein.

146.   In an effort to collect Ms. Guertin's mortgage debt, Ocwen disclosed information

concerning the mortgage loan to national credit reporting agencies knowing that a

permanent loan modification was in effect and the debt was part of a bankruptcy.

147.   Ocwen knew that the alleged debt was in dispute yet it did not disclose that fact

and then failed to take any action to correct the inaccurate information after receiving

notice of the improper disclosure.

148.     Ocwen thereby violated the Maine Consumer Credit Code (MCCC), 9-A M.R.S. §§ 9-403(F).

149.     Ocwen also attempted to collect on the mortgage debt after such activity had been barred by a final order of a court of the United States, the Consent Judgment, in violation of 9-A M.R.S. §§ 9-403(G).

150.     Per the Consent Judgment, Ocwen was obligated to "cease all collection efforts while the borrower (i) is making timely payments under a trial loan modification." Ocwen 2014 Consent Judgment at Exhibit A, p. A-26, par. (D)(4) found at https://nationalocwensettlement.com/Portals/0/Documents/Exhibit%20A.pdf

151.     As stated above, Ocwen sent monthly statements and returned payments to Ms. Guertin seeking the pre-modification amounts due during the modification period. *See* Exhibits 13, 14, 19, 20, 22, 23, 26, 27, 28, 31, 35, 37.

152.     Ocwen's behavior was so outrageous and egregious as to constitute malice or implied malice.

153.     Such violations constitute a violation of the Maine Unfair Trade Practices Act pursuant to 9-A M.R.S. § 9-408. Ms. Guertin did suffer actual damages as a result of Ocwen's conduct in paying inflated, inaccurate monthly amounts not due on the loan at the time to Ocwen.

154.     The Plaintiff demands judgment for actual damages, including emotional damages, statutory damages, punitive damages, their attorneys' fees and costs, for pre-judgment and post- judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

155.     As the principal of its agent Ocwen who was acting within the scope of their

agency, Deutsche Bank is jointly and severally liable for Ocwen's conduct.

**COUNT SIX:**

**Violation of the Real Estate Settlement Procedures Act 12 U.S.C.  2605 et seq. (Ocwen).**

156.     The Plaintiff repeats and realleges and incorporates by reference the paragraphs

above as if fully set out herein.

157.     Ms. Guertin, individually and through counsel, delivered qualified written

requests (QWRs) to Ocwen on November 9 and 13, 2015, January 7, 2016 and March 2,

2016 which were to Ocwen's designated address. The name of the borrowers, the account

number, and a statement of the reasons why Ms. Guertin believed the account was in

error, including supporting documents, were included in the QWRs.

158.     Ocwen failed to respond within 30 then an additional 15 business days to the

January 7, 2016 QWRs.

159.     Ocwen failed to provide information requested in the November 9 and 13, 2015

and January 7, 2016 QWRs including information regarding the amount of and reason for

the alleged default; reasons for not delivering mortgage statements to Ms. Guertin post-

bankruptcy discharge; the current terms of the loan as reported by Ocwen; why the 2008

foreclosure was begin pursued; and a complete life-of-the loan payment history.

160.     Ocwen failed to make appropriate corrections on the account, including

implementing the terms of the modification, and failed to provide a written explanation or

clarification of its response or lack thereof in response to the January 7, 2016 QWR.

161.     Ocwen failed to provide the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

162.     Ocwen failed to accurately report the status of the loan to the credit reporting agencies as current.

163.     As a result of Ocwen's violations, Ms. Guertin suffered actual damages in the extra amounts paid each month to Ocwen and emotional distress regarding the risk of losing her home as detailed above.

164.     Had Ocwen investigated the issues and corrected the account, Ms. Guertin would not have had to incur fees to retain and pay current counsel and Ms. Guertin would not have had to make inflated payments to Ocwen.  Ms. Guertin also would not have suffered much of the emotional distress described above as Ocwen could have brought the loan current and the risk of losing her home would be gone.

165.     Ms. Guertin is entitled to actual damages, including emotional damages, pursuant to 12 U.S.C. § 2605(f)(1)(A); statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B); and "the costs of the action, together with any attorneys' fees incurred in connection with such action," pursuant to 12 U.S.C. § 2605(f)(3) actual and statutory damages, as well as attorneys' fees and costs, and any other relief the Court deems appropriate.

**COUNT SEVEN and EIGHT:**
**Fraud and Fraudulent Misrepresentation (Ocwen/Deutsche Bank)**

166.     The Plaintiff repeats and realleges and incorporates by reference the paragraphs above as if fully set out herein.

167.    Ocwen and Deutsche Bank engaged in fraud and fraudulent misrepresentations against the Plaintiff.

168.    Ocwen made false representations to Ms. Guertin, including but not limited to (a) representing for a period of over three years that Ms. Guertin owed inflated monthly payments and principal on her mortgage and an increasing past due amount based on the pre-modification terms of the loan (*See* Exhibits 13, 14, 19, 20, 22, 23, 26, 27, 28, 31, 35, 37); and (b) that Ocwen would not correct the problem despite Ms. Guertin's attempts at a resolution.

169.    Deutsche Bank made false representations that it could auction off the property when it sought to continue with the foreclosure and sale of her home despite having brought the loan current through a bankruptcy court approved modification.

170.    Ocwen's and Deutsche Bank's false representations were material facts related to the Ms. Guertin's loan, i.e., the amounts due and the status of the loan.

171.    Ocwen and Deutsche Bank made the false representations knowing that a permanent loan modification was in effect, and had been approved by the bankruptcy court on October 30, 2012, bringing the loan current and reducing the monthly payments and principal due on the loan.  *See* Exhibits 13, 14, 19, 20, 22, 23, 26, 27, 28, 31, 35, 37.

172.    Ocwen's and Deutsche Bank's misrepresentations were knowing and/or reckless as they had the information and ability to correct the error but never did.

173.    Ocwen and Deutsche Bank made the false representations to Ms. Guertin to try and collect more money on the loan. *See* Exhibits 13, 14, 19, 20, 22, 23, 26, 27, 28, 31, 35, 37.

174.      Ms. Guertin justifiably relied on Ocwen's and Deutsche Bank's representations to her detriment when she made nearly three years of pre-modification payments, incurred the time and expense of retaining counsel to correct the problem as well as time and aggravation spent trying to correct the problem herself.

175.      Ms. Guertin also suffered emotional damage by Ocwen's and Deutsche Bank's misconduct as outlined in detail above.

176.      Such conduct by Ocwen and Deutsche Bank was calculated to benefit Ocwen and Deutsche Bank financially.

177.      Ocwen's conduct was deliberate, knowing, intentional, and so outrageous and egregious as to constitute malice or at least to imply malice.

178.      As such, the Plaintiff is entitled to actual, compensatory, and punitive damages, and to any other relief this Court finds just and appropriate.

179.      As the principal of its agent Ocwen who was acting within the scope of their agency, Deutsche Bank is jointly and severally liable for Ocwen's conduct.

## <u>COUNT ELEVEN:</u>
### Breach of Contract (Ocwen/OneWest /Deutsche Bank)

180.      The Plaintiff repeats and realleges and incorporates by reference the paragraphs above as if fully set out herein.

181.      The Loan Modification Agreement was a written, legally enforceable contract to modify the terms of the Ms. Guertin's loan.

182.      There was a meeting of the minds as to the terms offered by OneWest on behalf of Deutsche Bank – it is memorialized in writing in the Loan Modification Agreement. *See* Exhibit 6.

183.        There was consideration for the contract, in that Ms. Guertin agreed to abide by

the conditions of the Agreement and make monthly payments of principal, interest, and

escrow on time in exchange for a change in the terms of the loan and a waiver of the

deferred principal balance after three years.

184.        There was mutuality of obligations as outlined in the Agreement.

185.        In sum, OneWest agreed that the Mortgage and Note would be amended and

supplemented with the offered terms if Ms. Guertin returned the signed Agreement and

made the timely payments indicated.

186.        A cover letter sent with the agreement stated:

   a. To accept this offer, you must sign, have notarized and return both copies of the
      Modification Agreement to us on the enclosed pre-paid envelope by 9/24/2012.  If
      the Modification Agreement has notary provisions at the end, you must sign both
      copies  before a notary public and return the notarized copies to us. *See* Exhibit 5.

187.        Ms. Guertin originally signed and had notarized the agreement and delivered to

OneWest before the deadline.  She then complied with OneWest's subsequent request to

have Ms. Guertin's son Brian sign the agreement and returned the signed and notarized

agreement shortly thereafter.

188.        OneWest received the original signed Agreement first before September 17, 2012

and then the second modified agreement on September 26, 2012. *See* Exhibit 6.

189.        The Agreement itself stated:

   a. If my representations in Section1 continue to be true in all material respects and
      all preconditions of the modifications set forth in Section 2 have been met, the
      Loan Documents will automatically become modified on 10/1/2012. *See* Exhibit
      6.

190.        The Agreement modified both the Mortgage and Note *See* Exhibit 6.

191.        Ms. Guertin complied with all of the conditions outlined for her in the Agreement.

192.     The Representations and Covenants in Section 1 continued to be true at the time.
Ms. Guertin signed and returned the Agreement.  *See* Exhibit 6.

193.     The Court approved the modification of the loan on October 30, 2012 after notice
was delivered to OneWest and Deutsche Bank.  *See* Exhibit 9.

194.     The Order was delivered to OneWest individually and on behalf of  Deutsche
Bank National Trust Company via the bankruptcy court notification center. *See* Exhibit
10.

195.     Neither OneWest nor Deutsche Bank objected to the approval of the loan
modification.

196.     Ocwen, upon acceptance of the servicing of the Mortgage and Note in or around
November 2013, had and/or has access to the loan modification agreement in Ms.
Guertin's file, had or has access to Ms. Guertin's bankruptcy proceedings including the
Court approval of the chapter 13 plan and loan modification.  Exhibits 3 and 10.

197.     In the Order Allowing and Disallowing Claims dated July 29, 2014, the
Bankruptcy Court approved the mortgage and mortgage arrears to be paid through the
chapter 13 plan by paying the creditor directly per the Loan Modification Agreement. *See*
Exhibit 16.

198.     Ocwen, OneWest, and Deutsche Bank received notice of the Order Allowing and
Disallowing Claims. *See* Exhibit 16.

199.     Ocwen, OneWest, and Deutsche Bank were provided with November 3, 2014
notice of the bankruptcy discharge. *See* Exhibit 17.

200.     Ms. Guertin made payments per the modified terms of the Mortgage and Note
from the effective date of the Modification, October 1, 2012.

201.     OneWest then Ocwen, on behalf of Deutsche Bank, accepted Ms. Guertin's payments in the amount specified under the modified terms of the loan for a period of at least 14 months and then accepted inflated payments thereafter for another 2 ½ years.

202.     Ocwen and OneWest breached the Agreement by, including but not limited to, failing to implement the modified terms of the Mortgage and Note, failing to apply Ms. Guertin's payments per the terms of the modified Mortgage and Note and seeking payments per the pre-modified terms of the Mortgage and Note.

203.     The Defendants' breach caused actual harm to Ms. Guertin in that Ms. Guertin continued to make payments per the Modification Agreement and then made inflated payments that caused her financial and emotional distress as detailed above.  These payments were never properly applied, causing her to be in default, incur late fees and charges.

204.     OneWest and Ocwen were acting as the agents, within the scope of their agency, for Deutsche Bank and therefore Deutsche Bank is joint and severally liable for their conduct.

205.     As such, the Plaintiff is entitled to actual, compensatory, and equitable damages including enforcement of the contract, and to any other relief this Court finds just and appropriate.


## COUNT TWELVE:

### Promissory Estoppel (Ocwen /OneWest/Deutsche Bank)

206.     The Plaintiff repeats and realleges and incorporates by reference the paragraphs above as if fully set out herein.

207.     If the Loan Modification Agreement is found not to be a legally enforceable contract, the Agreement should be enforced per the doctrine of promissory estoppel.

208.     OneWest, on behalf of **Deutsche Bank** made a promise to modify Ms. Guertin's Mortgage and Note with more favorable and affordable terms which OneWest should have reasonably expected to induce action or forbearance on the part of Ms. Guertin. *See* Exhibit 6.

209.     In sum, OneWest promised that the Mortgage and Note would be amended and supplemented with the offered terms if Ms. Guertin returned the signed Agreement and made the timely payments indicated.

210.     A cover letter sent with the agreement stated:

   a.   To accept this offer, you must sign, have notarized and return both copies of the Modification Agreement to us on the enclosed pre-paid envelope by 9/24/2012. If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. *See* Exhibit 5.

211.     Ms. Guertin originally signed and had notarized the agreement and delivered to OneWest before the deadline. She then complied with OneWest's subsequent request to have Ms. Guertin's son Brian sign the agreement and returned the signed and notarized agreement shortly thereafter.

212.     OneWest received the original signed Agreement first before September 17, 2012 and then the second modified agreement on September 26, 2012. *See* Exhibit 6.

213.     The Agreement itself stated:

   a.   If my representations in Section 1 continue to be true in all material respects and all preconditions of the modifications set forth in Section 2 have been met, the Loan Documents will automatically become modified on 10/1/2012. *See* Exhibit 6.

214.     The Agreement modified both the Mortgage and Note. *See* Exhibit 6.

215.        OneWest's promise to modify the loan did induce the Ms. Guertin to enter into

the Agreement and make the reduced modified payments on the loan.

216.        The Agreement modified both the Mortgage and Note. *See* Exhibit 6.

217.        Ms. Guertin complied with all of the conditions outlined for her in the Agreement.

218.        The Representations and Covenants in Section 1 continued to be true at the time

Ms. Guertin signed and returned the Agreement. *See* Exhibit 6.

219.        The Court approved the Loan Modification Agreement on October 30, 2012 after

notice was delivered to OneWest and Deutsche Bank.  *See* Exhibit 8.

220.        The Order was delivered to OneWest and Deutsche Bank National Trust

Company via the bankruptcy court notification center. *See* Exhibit 8.

221.        Neither OneWest nor Deutsche Bank objected to the approval of the loan

modification.

222.        Ocwen, upon acceptance of the servicing of the Mortgage and Note in or around

November 2013, had and/or had access to the loan modification agreement in Ms.

Guertin's file, had or had access to Ms. Guertin's bankruptcy proceedings including the

Court approval of the chapter 13 plan and loan modification.  *See* Exhibits 3 and 8.

223.        In the Order Allowing and Disallowing Claims dated July 29, 2014, the

Bankruptcy Court approved the mortgage and mortgage arrears to be paid through the

chapter 13 plan by paying the creditor directly per the Loan Modification Agreement. *See*

Exhibit 16.

224.        Ocwen, OneWest, and Deutsche Bank received notice of the Order Allowing and

Disallowing Claims.  *See* Exhibit 16.

225.      Ocwen, OneWest, and Deutsche Bank were provided with notice of the November 3, 2014 bankruptcy discharge. *See* Exhibit 17.

226.      Ms. Guertin had been making payments per the modified terms of the Mortgage and Note from the effective date of the Modification, October 10, 2012.

227.      OneWest then Ocwen, on behalf of Deutsche Bank, accepted Ms. Guertin's payments in the amount specified under the modified terms of the loan for a period of at least 14 months and then accepted inflated payments thereafter for another 2 ½ years.  .

228.      OneWest and then Ocwen failed to honor its promise by, including but not limited to, failing to implement the modification terms and failing to apply the Ms. Guertin's payments according the terms of the Agreement.

229.      OneWest and then Ocwen failed to honor the promise by, including but not limited to, failing to implement the promised modified terms of the Mortgage and Note, failing to apply the Ms. Guertin's payments per the terms of the modified Mortgage and Note, alleging the loan was in default, and seeking payments per the pre-modified terms of the Mortgage and Note.

230.      The Defendants' failure to honor the promise caused actual harm to Ms. Guertin in that Ms. Guertin continued to make payments per the Modification Agreement that were never properly applied, made inflated payments at OneWest and Ocwen's demand, causing her to be designated in default and to incur late fees and charges.  She also suffered financial and emotional harm as detailed above.

231.      Such injustice can be avoided only by enforcement of the promise.

232.     As such, the Plaintiff is entitled to actual, compensatory, and equitable damages including enforcement of the Modification Agreement, and to any other relief this Court finds just and appropriate.

233.     As the principal of its agents OneWest and Ocwen who were acting within the scope of their agency, Deutsche Bank is jointly and severally liable for their conduct.

### DEMAND FOR JURY TRIAL

234.     The Plaintiff Georgia R. Guertin requests a trial by jury on all counts.

Dated at Biddeford, Maine, this March 31, 2016.

MOLLEUR LAW OFFICE

By: _/s/ Andrea Bopp Stark_
Andrea Bopp Stark, Esq.
Counsel for Plaintiff Georgia R. Guertin
419 Alfred Street
Biddeford, Maine  04005-3747
(207) 283-3777
(207) 284-4558 Fax
andrea@molleurlaw.com

TERRY GARMEY AND ASSOCIATES

Gary Goldberg, Esq.
482 Congress Street, Suite 402
Portland, ME  04101-3424
(207)899-4644
ggoldberg@garmeylaw.com